The final matter today, No. 24-1628, Canna Provisions, Inc. v. Merrick B. Garland. At this time, would counsel for the appellant's Canna Provisions please introduce himself on the record to begin? May it please the Court, my name is David Boies, and I represent the plaintiff's appellant. And with the Court's permission, I'd like to reserve three minutes for rebuttal. You may. I think we are on common ground that Congress can regulate purely intrastate commerce only if the failure to regulate that intrastate commerce would reasonably conclude would substantially interfere or undermine with legitimate congressional regulation of intrastate commerce. In the Gonzales case, the Court looked at the regulatory scheme that was in existence then and the facts relating to the cultivation and commerce in marijuana and concluded under those facts that there was a reasonable conclusion that failure to regulate intrastate marijuana commerce would substantially undermine and the Court's words leave a gaping hole in Congress's regulation of intrastate commerce. We are today confronted with a very different regulatory scheme and very different facts. And the question, the basic question before this Court is whether, given the legal principles articulated and applied in Gonzales, it is permissible for Congress to prohibit intrastate marijuana commerce given the current regulatory scheme and given the current facts about marijuana. In Raich, it was just pure personal possession and cultivation, right? In Raich, wasn't it pure personal cultivation and possession? Yes, it was. And here, we're dealing with commercial sales? You're dealing with commercial sales. So how does that affect what you're saying? Whether it's commercial scale or personal use, I think the Supreme Court has made clear that there can be regulation if there is a substantial adverse effect on intrastate regulation. I thought commercial sales of a product is pretty far from Wickard in terms of you're going, I mean, Wickard was a hard case and still found commerce when it was personal cultivation. Wickard wasn't suggesting we should be equally concerned about the situation of commercial sales of a product. I think the critical issue, Your Honor, is not whether it is for personal consumption or whether it is for sale. The critical question is what is the effect? Yes, I understand that, but what is the basis for having a concern about the effect on intrastate commerce of commercial sales? Wickard, like Raich, was questioning whether there is an effect when it's personal cultivation. Neither suggests there's any reason to be concerned when we're talking about commercial sales. No, but, Your Honor, if you have a purely intrastate, commercial. I think that begs the question. The issue is, does it make sense to say a commercial sale of a product is purely intrastate? Wickard was dealing with the question of is personal cultivation and possession purely intrastate? They said it happens in one place. All things happen only in one place. I mean, I guess you could have a crossing state line. But the gravamen of the issue that Wickard and Raich were dealing with is should we treat as having an intrastate effect something that is involving not any commercial activity at all necessarily, just personal cultivation. Each one ended up saying yes. Now you're saying we should derive from that a concern that a commercial sale of a product doesn't have an intrastate effect. And I'm just trying to think, is there any case that supports that idea? Well, I mean, for example, in Rightward Dairy, the 1942 case cited by the government, there you clearly had commercial activity. You clearly had the commercial activity of selling milk. But the court viewed that as purely intrastate commercial activity. And the only way the court justified the federal regulation of that was by saying that if you didn't regulate it, you would have a substantial deleterious effect on the interstate regulation. In that case, of course, what Congress was trying to do was trying to keep up prices for interstate milk. And what the court held is if you allow intrastate milk sales that are non-regulated, that will drive down the price of intrastate. And by driving down the prices of intrastate commerce, you will adversely affect the attempt to keep interstate rates high. So that was a case in which the court says, I think it's – I guess just the intuitive thing that seems strange is if Congress has an interest recognized in rates in regulating personal cultivation that occurs in a place, how could it not have an interest in the marijuana market? How could it not have an interest in regulating the sale of marijuana? It does have an interest in Gonzales. The court held that it did have an interest. But here, there is no attempt to interstate – to regulate rates. This is not a situation like Wickard. It's not a situation like almost – it's not like a Rightwood Dairy. It's not like almost all of the cases. Well, there's a federal prohibition against the sale of marijuana. That's still in place. But what the court holds in – So if you – wouldn't there be a hole in it if we suddenly said, but you can do it in your own state? Well, Your Honor, that would – a quarter century ago, before the Rohrbacher-Farr Amendment was passed. Yeah, but Rohrbacher-Farr then just – I don't – are you claiming that the extent of the interstate commerce limitation is the extent of the breach of Rohrbacher-Farr? I'm not sure I understood the question, Your Honor. I'm sorry. Is your constitutional claim as to what Congress cannot regulate it limited to being coextensive with Rohrbacher-Farr? No. All right, so then what's Rohrbacher-Farr got to do with it? No, no. I think Rohrbacher-Farr is an important aspect of it. I don't think it's the only aspect. I mean, for example, Congress permitted the establishment of medical marijuana in the District of Columbia, a place where Congress has plenary control. So it's not just Rohrbacher-Farr. What the principle of Gonzales was that you had an attempt to totally eradicate marijuana, first. Second, that if you allowed intrastate marijuana to be produced, it was indistinguishable. It was a fungible product, indistinguishable from interstate marijuana. And third, that it would be substantially diverted from intrastate to interstate. Now, each of those points is critical to justifying the regulation, prohibition of intrastate. Because in the absence of those, you can't reasonably conclude. Counsel, I think the government says the key part of the decision is different from what you are arguing. So the government says what the Supreme Court said in Gonzales was that Congress' overarching goal was to control the supply and demand of controlled substances in both lawful and unlawful channels. And that hasn't changed. Congress still has that goal. So why is the government's framing of the issue? I mean, you do cite things that are different today than were different at the time of Gonzales. But given the overarching goal of regulating both lawful and unlawful markets and controlled substances, why did those facts eliminate congressional authority? Because, as the court held in Gonzales, regulating intra- and interstate commerce was only a means to the end of eradicating it. That is a goal that has been abandoned. Other than the two things you've identified, Rohrabacher-Farr, which is itself questionable whether that means they've abandoned the goal, and I guess the D.C. legislation, but you're not claiming that the limitation on Congress' commerce power is coextensive with either of those two things. So why do those carve-outs suggest that? Because then the entire project is over, even though the federal statute remains in place, banning the sales. I think what we're contending, Your Honor, is that Congress can continue to regulate interstate commerce. But I'm asking, it's just a version of Judge Ruckelman's question, What about Rohrabacher-Farr and the D.C. legislation indicates that the goal articulated in Raich is no longer their view of what they're trying to accomplish with respect to all sales that are not covered by those two provisions? The first reason, Your Honor, is that a premise of the Gonzales case was that it was indistinguishable. You couldn't distinguish between interstate and intrastate. Rohrabacher-Farr and the District of Columbia situation demonstrates that Congress is saying you can distinguish. In other words, you have to distinguish. Rohrabacher-Farr requires the government to distinguish between interstate marijuana and intrastate marijuana. The second thing is, as the well-pleaded allegations of the complaint, and I remind the Court that we're here on a motion to dismiss, unlike Gonzales, which had a preliminary injunction motion where the plaintiff bore the burden of proof. But what you have here is a situation in which you have to have some adverse effect, some substantial adverse effect on the interstate regulation. If the intrastate marijuana commerce is kept intrastate, as the Rohrabacher-Farr amendments, the District of Columbia decisions, and, for example, the Massachusetts legal provisions with the seed-to-sale regulations that make sure that the marijuana does not seep into interstate commerce, all of those things make it very different and preclude the finding that is essential to finding congressional power to regulate purely interstate commerce. Thank you. Thank you, counsel. At this time, counsel for the appellee, please introduce yourself on the record to begin. May it please the Court. Daniel Aguilar for the Attorney General. I think opposing counsel started the presentation today with saying it was common ground that we all agree that Raich held that it was necessary for the entire program to control all of marijuana and that that was a necessary finding for that regulation of intrastate commerce. We don't agree with that. And I think the relevant pages of Raich with this are at 18 to 22. And the particular point at which they rely on is Raich's summary of Wickard, which says Wickard establishes that Congress can regulate purely intrastate activity. That is not itself commercial and is not produced for sale if it then concludes and then adds on that connective sinew saying this is a whole for the purpose of the program. But it was taken as a given in Raich and throughout the history of the Interstate Commerce Clause that commercial activity, wholly intrastate, if, and the Raich Court says this is a modest task at page 22, if there is a reasonable basis to conclude that those activities in the aggregate can substantially affect interstate commerce, then Congress can regulate those wholly intrastate activities. And that's why Raich was a harder case. It was dealing with that non-market, non-commercial function. But here Plainham's complaint alleges that they are engaged in growing, dispensing, and selling marijuana for profit for both recreational and medical uses. And that's market activity that is certainly within Congress's Commerce Clause authority. And the Controlled Substances Act as a whole is designed to enact a closed system for it. Schedule I substances are generally prohibited. But I'd also note that the Controlled Substances Act contemplates that substances can be rescheduled based on new scientific findings or analysis. And, indeed, that is what the Department of Justice is currently engaged in, determining whether or not there is a basis for rescheduling marijuana from Schedule I to Schedule III. And those proceedings are still ongoing. Other things that are listed on Schedule III are certainly still subject to that extensive system of regulation and control, even though they may lawfully be prescribed for certain activities. But that doesn't mean that if Congress places certain appropriations riders on enforcement capabilities or states generally permit or choose not to control those controlled substances like testosterone or ketamine, that somehow Congress loses its constitutional authority to so regulate the markets for those substances. I'm happy to answer any questions that the Court has. Counsel, I am just curious exactly what your position is. Are you saying that we just look at Gonzales and then we just full stop, end of our analysis, we say this case is controlled by that case, or should we be actually looking at the mode of analysis the Supreme Court used in that case and then applying it to the facts alleged in the complaint here? I think both are appropriate. If you want to look to the mode of analysis, I look to that page 18 citation that I just gave you, but also on page 21 in footnote 32, which is where the majority rejects the premise that plaintiffs urge here, saying the dissenters would impose a new and heightened burden on Congress that legislation must contain detailed findings proving that each activity regulated within a comprehensive statute is essential to the statutory scheme. Such an exacting requirement is not only unprecedented but also impractical. And it's that general assumption that Congress has here regulated a class of activities, controlled substances writ large, marijuana as a whole, and made a decision about how that should be regulated in interstate commerce. That authority also reaches to intrastate markets here where it's being bought and sold. Is there anything about, maybe as a version of Judge Ruppelman's question, is there anything we need to know about this market, or is it just the fact of a commercial sale no matter the product that automatically results in the conclusion that they have the commerce power? I think the fact that it's being sold in a market for profit and that, as the district court noted, I think it's that addendum page. And that could be just any product, no matter what the product is. Anything that is being sold anywhere in the United States can be made contraband by the United States. I think there still needs to be, well, to be clear, all right, there are a couple of questions here about is there a rational basis for prohibiting it overall. Again, Raish notes that the constitutional significance of that authority, whether it's a prohibition, a restriction, a simulation, is of no constitutional import. You might say, but there's no rational basis to prohibit this particular thing based on this record. But here, again, the system is one of division and control. Even as a Schedule I substance, marijuana is still subject to research purposes and particular uses. We do not have a challenge that's pitched at the district court having erred at that level. I agree. The challenge on appeal is that the error was at a different level of analysis. It is that Congress lacks constitutional authority. That's a consequence of the particular ways the medical marijuana laws have developed. Right. And I don't think that they – and take their reply brief to say we don't think that state laws legalizing marijuana divest Congress of that constitutional authority. So even if all of the states had continued to prohibit marijuana, as they had done for many years, I think their argument then is because the Department of Justice has at times used its enforcement discretion in certain ways and because Congress has attached appropriations rights, restricting the Department of Justice not to use certain funds to prevent state medical marijuana laws from being used in a particular way, that then divests Congress of constitutional authority. And we know that's not true. The courts have routinely rejected such challenges after Raich. And, again, Raich is the harder case. That's why, for sure, this case is easier. Anything further? Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellants please reintroduce himself on the record? He has a three-minute rebuttal. Thank you. The idea that anything that is sold for profit, intrastate, in any market is subject to congressional regulation, I think flies in the face of repeated Supreme Court – But we don't quite have that issue because you're not contesting that marijuana is such a product that could be banned entirely absent the new developments in medical marijuana regulation, correct? I don't take you to have been making a global argument. There's something about the nature of marijuana that makes it exempt from the general idea that commercial transactions of products could be rendered contraband by Congress through regulation of interstate commerce. Your Honor, I think intrastate commerce cannot be determined to be contraband. I think that just sort of begs the question. It's intrastate in the sense it's happening intrastate. The question is when it's a commercial transaction happening intrastate, do we treat that as something that, with relatively minimal analysis, we assume or can conclude that there is an effect on commerce because of the effect on the market as a whole? And there may be some products for which that wouldn't work. It would be irrational to think so. You're not making an argument marijuana is such a product. I absolutely am, Your Honor. Well, you only are because of the developments in the regulation of medical marijuana itself as opposed to the nature of the product. No, no, that's not so, Your Honor. Maybe it's partly so in the sense it's regardless of the product. What I'm saying is regardless of the product, and this includes marijuana, if you have purely intrastate commerce, Congress has no power to regulate that. If Congress had the power to regulate that just because it was a commercial transaction, it would make Wickard, the dairy case that I cited, all of these other cases in which you have commercial transactions in which the court goes through an elaborate analysis as to why you can here regulate intrastate commerce because it has the requisite adverse effect on this comprehensive legislation. But the position is that Wickard It would make all of that irrelevant. But, counsel, the difficulty is that Wickard wasn't commercial. That's the issue is that the facts in Wickard was that the wheat was being grown and used purely for personal use. It wasn't being put into the market at all. That's what made it arguably a hard case, and yet the Supreme Court still said it was okay. And here there is clearly commercial activity. It is a commercial activity, but what I'm saying to this court is that the idea that just because it is commercial intrastate commerce, makes it subject to being contraband by Congress, is not consistent with what I think a standard court should prove. It's not just because. Take guns, okay, because you have a gun transaction. In a state it occurs. Can Congress regulate that under the Interstate Commerce Clause? Is that a hard question? It is a hard question if what you're talking about is something that is purely intrastate. Here's the gun transaction. I sold it to my friend. The question is where was the gun manufactured? Was it manufactured with materials that moved in interstate commerce? There is a question about when is something purely intrastate commerce? And there's no requirement that the gun, do you have to prove that the gun was in interstate commerce in order for them to have a ban on the gun, that the gun has to be shown to move? Well, and I'm going to mispronounce it. It's the Nascenito, it's that gang case. In that case, this court thought it was important to be able to show that the gun actually traveled from New Hampshire to Maine. But that wasn't the sale, was it? What? That wasn't the sale case. No, it wasn't a sale, but it was. Yes, that's the point. But it is a sale. That's what we're talking about. But the question is whether it's an interstate sale or an intrastate sale. And if you look at the cases, forget Wickard, forget even Gonzales. If you look at the cases, the Derry case, all of the other cases that involve commercial transactions, the Supreme Court makes a big effort to say what is the congressional purpose and how does intrastate commerce interfere with that. And what you have here is a situation in which there is no interference with the current congressional objective. The reason Roebuck-Farr is important is not merely that it says that Congress is accepting of medical marijuana. It is because what Congress is saying in Roebuck-Farr is that you can distinguish medical marijuana from interstate marijuana. And that was the crux of the Gonzales opinion. You can't read that opinion and not understand that what the court is saying is that because you can't distinguish it, you can prohibit intrastate in order to protect the interstate regulation. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.